Well once again I'm John Minster. I'm appearing on behalf of the plaintiff appellate in this case Douglas Miser. I'd like to introduce the court to my client who's seated at council table. I'd like to reserve four minutes for rebuttal. I recognize I didn't work out last time but we'll see what happens. Mr. Miser seeks compensation for injuries he suffered at the hands of Super Bowl Sunday at a sports bar. He suffered a traumatic brain injury. He suffered abrasions on his face and his head, mostly on the left side. He suffered cracked ribs. We proved our case based on the findings that the trial judge made with one exception and it's important to note what the trial judge found. A, that he forced Mr. Miser face down onto the floor. That's a factual finding. He found that Mr. Miser... You're taking that fact finding out of context. I mean, you know, this was Super Bowl Sunday. You got a super crowded bar. You got a guy who was super drunk who has assaulted, although not, you know, not seriously or anything, but he had been aggressive with the waitress or the manager and he declined to identify himself or more importantly to leave when the officers asked him to and tried, you know, in effect gently or politely to escort him out of the place. He then responded by assuming a fighting stance, which the officers could well regard given all the other circumstances I've just described, as a real threat. So then they took him down. So, you know, it's not just like there's one fact finding that you can take out of all of the circumstances. And of course you're right. You have to consider the totality of the circumstances. However, in this situation, first of all, we weren't dealing with officers contacting somebody who had committed a serious crime like an armed robbery or a shooting. Secondly, there was no indication that he was armed and they didn't have that to worry about. Thirdly, they observed him as he paid his bill for the bar and you pay your bill when you're planning to leave. That's just the way things work. I don't know, I've never heard the term bladed stance before in this case. I don't know where that comes from, but they do, the officers or the deputies did agree that he made no verbal threats to them and he made no, didn't try to take a swing at them at all. He just stood there, okay? So even if he was in what they thought in their own minds was a force that's actually used may be excessive. And that's a near quote from the case of Santos versus Gates. One of the cases, these are cases that support my position. Santos is in our brief and also we're also relying on the Gibson case, the eggshell skull case. We're relying on Drummond versus Anaheim. Oh, and Santos was a takedown case, by the way. Officers take him down, he's got a broken back and the courts had that to go forward using the objective standard. Drummond versus Anaheim, which I cite. Another case for us, again a takedown case, again and the officers are on top of Mr. Drummond like they were on top of Mr. Miser and he dies of compression asphyxia. Brouwer versus County Vigno, Justice Scalia's opinion. We also rely on and I've quoted Brouwer and cited Brouwer and we also cited it within the Vaughan case where Justice Scalia pointed out that when a seizure takes place, it's a seizure even if what actually happens to the subject goes beyond what the deputy intended and he talks about, you know, a bullet that hits the heart instead of, although the deputy meant to hit the leg and there's some other examples that he uses there. So, the Brouwer case supports us. That was a roadblock case, sort of a takedown via roadblock, if you will, and that led to Mr. Brouwer colliding with the deputy and he died also. Obviously, in all these cases, and then there's Gibson, the Eggshell Skull case. This was a bench trial, right? Yes, sir. And didn't the district judge say that you failed to prove that the deputies knowingly pushed his head into the floor and that he was not subjected to deadly force? How do you get around those facts? Well, here's why we're here on this appeal. We're here because we don't have to prove that they knowingly pushed his head into the floor. That's true. It may be true. We don't have to prove that they intended to strike his head into the floor and that's the thrust of all these cases. Santos, they probably didn't intend to throw him down so that he would do something to his back. The judge did say he was not subjected to deadly force. Well, what he says is if we had proved that the deputies acted knowingly, then he would have been subject to deadly force and that's in the footnote. Well, I don't know that he exactly said that. I guess that's what we're here to determine, whether that's what he was saying, because all of that came after he said an objective law enforcement officer in the deputy's position reasonably could have concluded it was necessary to resolve the standoff quickly in order to prevent other patrons from becoming involved. Consequently, when Mr. Miser pulled away and assumed a fighting stance, Deputy Shover and Gregory properly forced him to the floor in order to subdue him. In the process, his head hit the floor with enough force to cause the injury. That's what he said. What is the finding of the case? Well, he found that they aggressively and rapidly forced him face down onto the floor. I think that's finding of fact number 44. His head hit the floor. There was such force used that his glasses were smashed against his face and that they pressed his head into the carpet. He found this, these are all in the facts section, with enough force to cause multiple abrasions to the face and the forehead. So as to the head injury and as to the knee strikes, given what he found in the factual findings, we need to use the weighing factors. But as to the head slamming or the alley beating, there was no evidence. And so therefore, we don't need to go to those. So we apply the three factors and then he comes up using the gram factors with what I just told you. However, his finding or conclusion that the officers did not intend to strike Mr. Miser's head against the floor, which is on page 10 of the order lines 8 through 10, is crucial to his decision. He talks about that Mr. Miser's head hit the floor with enough force to cause a brain injury. The court's devoted extra time. Again, it's on page 10. Actually, I'm running lines 5 through 13. Well, my worry is, and I appreciate what you're trying to put in there, but when I read all this decision trying to decide what he was really saying, I didn't find any place in his opinion that the lack of bad intent in this situation meant that the actions were reasonable. That was never said. And it isn't part of the three-part test. So that's why I tried to see where, when he read the three-part test, what he said. And that's when I got that particular phrase. I understand that. But when he's explaining his decision-making process, he says that the court is satisfied they did not intend to strike Mr. Miser's head against the floor. His injury was an accidental or, to use a paraphrase, unintended consequence of the technique they used. And that puts us right into the cases I'm talking about. Santos, an unintended consequence, accidental consequence was the broken back. Gibson, unintended accidental consequences of what they did to him. Drummond, I'm sure the officers did not intend to suffocate Mr. Drummond. But the technique that they did choose, to paraphrase our judge, caused that. And we don't have to prove that they did it intentionally in order to get liability. And then on deadly force, which you asked about, in the footnote he says, had Mr. Miser proved that the deputies intentionally pushed his head into the floor, he would have proved that he'd been subject to deadly force. But he says the court is not satisfied that any deputy knowingly pushed his head into the floor or knowingly struck him in the head. And that's where, that's why we're appealing, because he required us to prove an element which is not an element of an excessive force claim under Section 1983. That's what this whole appeal is about. And we've got all these cases that say, you know, there was some horrible consequence of what they did. And these are, you know, we're talking about the Supreme Court, the Ninth Circuit, all my cases are Ninth Circuit cases. They say that the police are liable if they're doing a seizure and something happens as a result. The county esteemed counsel admitted at the trial that they had seized Mr. Miser, that the seizure went farther in terms of causing injury than they would have liked, does not absolve them of liability. So, in effect, when he's talking about intent to cause damage or, you know, acting knowingly, he's really imposing on us a criminal law standard. Because normally in criminal law, we've got the mens rea and we've got the actus rea. It's the act. But this is a civil case where the Supreme Court told us that the standard is objective reasonableness and the subjective intent of the officer is irrelevant, whether it's good or bad. Thank you. I think your time is up. Thank you. It looks like I've got an extra minute there. Thank you very much. But I wanted you to get your whole idea out. Okay. Thank you very much. Good morning. Please, the court and counsel, my name is Robert Binger. I'm a deputy prosecuting attorney. I represent the remaining defendants in this case, deputies Shover, Peterson, and Gregory. I'd like to go right to the footnote that plaintiff questions. It's at ER 28 where the judge reiterates Mr. Miser's allegations that his head was intentionally and repeatedly pushed into the carpet and that he was beaten unconscious during transport by Deputy Shover. The court went on to say, had Mr. Miser proven either of these things, he would have proven he would have been subject to deadly force. The fact is he didn't prove either of those, making this footnote an abstract hypothetical comment by the court. We know the alley beating didn't occur. We know that his head was not repeatedly pushed or slammed into the carpet. The problem is that it's not just the footnote. I mean, finding a fact 47, you know, also finds that while he was down, no deputy knowingly struck his head against the floor. So, you know, I can't tell, but it appears to me as if the district judge somehow had in his head that knowingly doing the knee strikes or knowingly pushing his head was what mattered. And intentionally, you know, slamming his head or pushing it into the carpet mattered. How do you suggest that those statements can simply be ignored? Well, Your Honor, in terms of the footnote, the footnote, remember, goes to the alley beating, which didn't happen, and it also goes to the intentional and repeated pushing, slamming his head into the carpet. That didn't happen. So the footnote part of the equation I don't believe is even relevant. Well, I realize it didn't happen, but, well, I mean, I realize that your view is that it didn't happen. But if his finding is correlated with this legal assumption of knowingly doing it, then how do I know it didn't happen? Well, the district court made findings that the alley beating didn't happen. Oh, I know the alley beating didn't happen. The alley beating didn't happen, and the repeated slamming of the head after takedown didn't happen. But now I'll go along to maybe the more important one, which has to do with the court's statement of intent that the deputies did not mean to intend, or didn't intend to strike his head against the floor during the takedown. Right. The importance of that is, we understand intent is not relevant to the Graham analysis. We certainly all know that. Before the court made this statement, though, he'd already completed the Graham analysis. I agree with that also. But the problem is, after making that statement, he then sums up by saying, although the technique resulted in a serious injury, it was not unreasonable, given the totality of the circumstances. So how am I supposed to read this thing from this height and say, well, the totality of the circumstances that he is considering in his summation do not include that the injury was not intentionally inflicted? Your Honor, I think what you're suggesting is perhaps that was an error by the court. And I think one of the important factors... Well, we know it was error. I mean, you're not defending the statement. It is what it is, Your Honor. Well, it is what it is, but you're not defending it, are you? You're arguing that it wasn't critical to the decision. Correct. And I think the reason... So I'm saying, how can I be sure that it's not critical of the decision, given that his summation occurs after it? I think you can be sure because we already know what he... because of the summary judgment where the court had already ruled that the... Well, his summary judgment appears to have gone by the wayside because he ignored it. He just went ahead and made the same decision again that he'd already made on summary judgment for reasons which escaped me, but he did. And... So I don't know what value the summary judgment still has. He obviously assumed he was reconsidering it. Well, I don't know. I think we can still look at it, though, in terms of what his decision was based on and was based strictly on the Graham factors as indicated in the summary judgment. I'm not so sure that the summary judgment went away, Your Honor. For example, in his judgment, he indicated that the judicial estoppel argument in summary judgment, that he was not considering that. So he's telling us which parts of his former or his earlier rulings he's not going to follow. Let me ask you a totally... Sure. I mean, sort of like a totally different question, but assuming you're right and assuming these were just gratuitous observations that really didn't influence the decision, what difference does it make if it's just remanded? If you're right, it would take him ten minutes to fix his order. That's correct, Your Honor. It's... And I guess the question, is that necessary in this case, given the totality of the orders, the Graham analysis? I don't think that's necessary, because I think his remarks concerning knowledge, which we understand shouldn't be in there. We wish they weren't in there. But I don't think they rise to the level of anything more than dicta. They're not necessary for the decision or irrelevant. I have no other questions. Anything else? Judge Reimer, did you want to go further? Just request that you would affirm Judge Van Sickle's order. We believe it was reasoned. We believe it was fair. We believe it was correct. Thank you. Thank you. Well, you've already had a minute and some more. Give me 15 seconds from where you are. Let's hear it. 15 seconds. I simply invite your attention to the footnote again, where he says, the deputies didn't act knowingly. And then he says, and I quote, it follows that he was not subject to deadly force, end quote. Shows that the subject of intent was crucial to his decision. Thank you very much. Thank you. This case is submitted. Case 09-35540, Miser v. Spokane County.
judges: Rymer, Nr Smith, Cjj Hart (N. Illinois), Dj